IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

———————————————

No. 4:23-cv-471

———————————————

The Christian Ministerial Alliance, *et al.*

Plaintiffs,

v.

John Thurston

Defendant.

———————

Before STRAS, Circuit Judge, MARSHALL, District Judge, and MOODY, District Judge.

———————

# ORDER

PER CURIAM.

    The parties have a discovery dispute. The plaintiffs seek to depose three state legislators who played leading roles in the reapportionment process—Senator Jane English, former Senator Jason Rapert, and former Representative Nelda Speaks. They also request production of eleven categories of documents from each. The legislators resist, relying on legislative privilege. The parties tried but failed to resolve their dispute. The Court must do so. These subpoenas *duces tecum* are quashed, though partly without prejudice and with some directions. The plaintiffs are entitled to some but not all of what they seek.

\*

This privilege dispute raises an issue of federal common law.  Fed. R. Evid. 501.  Under that law, state legislators such as English, Rapert, and Speaks enjoy a privilege that, in general, protects their legislative work against forced disclosure in a lawsuit.  *Tenney v. Brandhove*, 341 U.S. 367, 372-77 (1951).  The privilege applies when legislators are "acting in the sphere of legitimate legislative activity."  341 U.S. at 376.  It insulates them "against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts."  *United States v. Brewster*, 408 U.S. 501, 525 (1972).  The privilege extends to legislators' work with all those involved in the modern legislative process—constituents, aides, party officials, advocacy groups, and lobbyists.  *Gravel v. United States*, 408 U.S. 606, 616 (1972) (staff);  *La Union del Pueblo Entero v. Abbott*, 93 F.4th 310, 322-23 (5th Cir. 2024) ("*La Union II*") (others).

The state legislators' privilege must yield, though, against a sufficiently strong federal interest.  *United States v. Gillock*, 445 U.S. 360, 373 (1980).  It gives way, for example, if the United States is pursuing criminal charges.  *Ibid*.  The Supreme Court has said it must likewise yield in other "extraordinary instances."  *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 268 (1977).  What counts as such an instance, however, the Court has not yet explained.  Last, a legislator can of course waive the privilege.  *La Union del Pueblo Entero v. Abbott*, 68 F.4th 228, 236-37 (5th Cir. 2023) ("*La Union I*").

The Arkansas legislators lean hard on *In re North Dakota Legislative Assembly*, 70 F.4th 460 (8th Cir. 2023), a Voting Rights Act case.  After the parties filed their joint report of discovery dispute, however, the Supreme Court vacated that recent decision as moot because the District Court had

decided the merits of the case. *Turtle Mountain Band of Chippewa Indians v. Howe*, 2023 WL 8004576 (D.N.D. 17 November 2023). Though the Eighth Circuit has no guiding word on the books, ample other authority exists.

The legislators candidly acknowledge "that courts across the country grapple with the application of privilege to claims made by state legislators." *Doc. 46 at 4*. We've found helpful guidance in *La Union II*, 93 F.4th 310; *La Union I*, 68 F.4th 228; *Pernell v. Florida Board of Governors of State University*, 84 F.4th 1339 (11th Cir. 2023); *American Trucking Associations, Inc. v. Alviti*, 14 F.4th 76 (1st Cir. 2021); *Lee v. City of Los Angeles*, 908 F.3d 1175 (9th Cir. 2018); *In re Hubbard*, 803 F.3d 1298 (11th Cir. 2015); *EEOC v. Washington Suburban Sanitary Commission*, 631 F.3d 174 (4th Cir. 2011). Plaintiffs press that this case presents an extraordinary instance where the privilege should not prevail. They rely, in particular, on decisions from several District Courts in voting rights cases. *South Carolina State Conference of NAACP v. Alexander*, 2022 WL 2452319 (D.S.C. 5 July 2022); *Bethune-Hill v. Virginia State Board of Elections*, 114 F. Supp. 3d 323 (E.D. Va. 2015); *Rodriguez v. Pataki*, 280 F. Supp. 2d 89 (S.D.N.Y. 2003). Those decisions are also informative.

As the Supreme Court has recently made clear in *Alexander v. South Carolina State Conference of the NAACP*, to succeed on their constitutional challenges to the 2021 reapportionment, the plaintiffs must overcome the presumption that the Arkansas General Assembly acted in good faith and show that an alternative map exists, a map consistent with traditional redistricting principles that would not have split southeast Pulaski County into three congressional districts. 144 S. Ct. 1221, 1235-36 (2024). Each is a formidable requirement. The proposed discovery seems to offer a path forward, but the legislative privilege blocks most of it.

We are not persuaded that this particular case presents one of those extraordinary instances where the state legislative privilege must yield to strong federal interests.  First, the United States is not pursuing criminal charges or asserting civil claims.  *La Union II*, 93 F.4th at 324.  Second, the fact that the Ministerial Alliance and other plaintiffs seek to vindicate important constitutional rights is not enough.  The *Arlington Heights* plaintiffs similarly invoked the Equal Protection Clause.  429 U.S. 252.  Third, and relatedly, that the General Assembly's intentions are at this case's core is not enough.  "The claim of an unworthy purpose does not destroy the privilege." *Tenney*, 341 U.S. at 377 (Frankfurter, J.).  If there were "a categorical exception whenever a constitutional claim directly implicates the government's intent, that exception would render the privilege of little value." *Lee*, 908 F.3d at 1188 (quotation omitted).  Fourth, this is not a case where the Venn diagram (the sought discovery overlaid with the plaintiffs' claims) shows a complete, or almost complete, overlap.   What was in the minds of these three legislators has some evidentiary value;  but the plaintiffs' claims ultimately turn on what the General Assembly intended, and alternative maps, rather than on what motivated these three legislative leaders.  *Arlington Heights*, 429 U.S. at 268 & n. 18;  *American Trucking*, 14 F.4th at 88-89.  Various maps are part of the public record.  The parties' experts may create others, too.  Last, while the plaintiffs have pleaded plausible claims that deserve resolution on the merits, the record so far does not disclose enough to make this case extraordinary.  There are, for example, no leaked communications from state officials directing mapmakers to pursue race-based cracking.  Compare the hypothetical in *Cooper v. Harris*, 581 U.S. 285, 318 (2017).  That kind of compelling evidence could help demonstrate an extraordinary instance where this kind of discovery should be allowed.  In this case, though, we are therefore left with applying the privilege to the sought discovery.

\*

Consider the oral depositions first. They would be the quintessential inquiry into the legislative process about apportionment, these legislators' decisions, and why they made them. But legislators' acts and motivations are, generally, off limits. *Brewster*, 408 U.S. at 525. The plaintiffs say that some planned areas of inquiry, such as how the process usually works, are generic, not privileged, and potentially helpful. Irregularities in the process for the 2021 apportionment could be revealed. True. But testimony from legislators is disfavored in general. *Arlington Heights*, 429 U.S. at 268. It is of limited evidentiary value, too. *United States v. O'Brien*, 391 U.S. 367, 383-84 (1968). Proof on the irregularity point has already been developed from other sources, and can be further developed from similar non-privileged sources, without the requested depositions. Oral depositions often wander, sometimes fruitfully and sometimes not. Comity, and the necessity of avoiding inquiry into privileged matters, counsel against them here.

Next, the eleven requests for production. Most cannot get past the privilege; one can be refined; and three are acceptable as is.

Requests 1, 2, 3, 5, 6, 7, 8 and 9 go too far. Each seeks "all documents and communications" received or provided by the legislator on some key aspect of redistricting before and during the legislative process. These matters include maps, racial data, population data, and Pulaski County-specific information about political affiliation and race. As they make decisions, legislators must communicate with constituents, staff, colleagues, and many others. The legislative privilege protects all that back and forth against disclosure. *La Union I*, 68 F.4th at 236-37.

A refined version of Request 4 would not collide with the privilege. In pre-internet days, the Supreme Court held that communication through press releases, newsletters, and the like was not shielded. *Hutchinson v. Proxmire*, 443 U.S. 111, 130-33 (1979). Social media posts are the current equivalent. Pre-decisional materials and communications like these are fair game.

Requests 9, 10, and 11 seek post-reapportionment communications, documents, maps, and materials. The universe here is things said, sent, received, or created about reapportionment *after* the General Assembly adopted Act 1116. The legislative privilege does not protect these things. By definition, anything from after the 2021 plan's adoption was not part of the legislative process culminating in that plan. The privilege protects legislators in their work, not in everything a legislator touches or says after work on a matter is done.

*

The last substantive issue is waiver. We are unpersuaded by plaintiffs' contention that any across-the-board waiver occurred. The newspaper article in which several legislators (including former Senator Rapert) were quoted about reapportionment issues, including the possibility of splitting Pulaski County, is unremarkable. This thinking out loud about alternative maps does not suffice. Neither does the Senate floor session transcript. The Senators were there engaged in a core legislative function. If we could find waiver based on what was said in the Arkansas Senate itself, little would be left of legislative privilege. And our law should encourage making a public record of the public's business.

Former Senator Jason Rapert's March 2024 post on X (formerly known as Twitter), however, is different. His post is in the margin.* First, in general the legislative privilege doesn't protect wholesale communications. *Hutchinson*, 443 U.S. at 130-33. More than eleven thousand people viewed this post. *Doc. 46-3*. Second, former Senator Rapert wrote about what he knew from his leadership role inside the redistricting process, explaining what did and did not motivate the state agencies and governmental affairs committee's actions. He chose to broadcast all this long after the reapportionment process had ended. In so doing he waived any privilege protecting what he chose to communicate about. *Favors v. Cuomo*, 285 F.R.D. 187, 212 (E.D.N.Y. 2012).

Plaintiffs may therefore explore the matters covered in this post with him. The most appropriate way to do so, we conclude, is by a deposition on written questions. Fed. R. Civ. P. 31. Using this old method will minimize the likelihood of wandering into matters that remain privileged, focus the plaintiffs' inquiry on matters covered by Senator Rapert's partial waiver, and respect our law's reluctance about compelling a legislator's testimony. *Arlington Heights*, 429 U.S. at 268 & n.18.

---

* "This is partisan rubbish. I am tired of seeing you post absolute untruths and falsehoods. There was ZERO discussion about using race as a factor in drawing the Congressional District lines. ZERO. You are simply race-baiting like you have always done. I know what happened because I chaired the Senate Committee in charge of handling the redistricting legislation. We worked hard on those maps and we caused less disruption of counties by taking the population needed from the most populous county rather than disrupting many others. Get over it and move on. We are all tired of you spewing venom and falsehoods towards everyone. #arpx #arleg #Arkansas". *Doc. 46-3 at 2*.

*

A final note on procedure. If any new disputes about legislative privilege arise in implementing our decision, rather than following the protocol specified in the Scheduling Order, the parties should follow the usual drill—a privilege log, a motion to compel, full briefing, and filing under seal of any disputed document or thing for in-camera review. This is not an invitation to reargue the issues already ventilated and decided; it is a direction to follow a different procedure for any new issues that may arise.

Joint reports of discovery dispute, *Doc. 46, 51 & 52*, addressed.

IT IS SO ORDERED this 12th day of July, 2024.

_____